IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appeal No. 14-14745-C

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PALAXAR GROUP LLC, et al.,
a Virginia Limited Liability Company
PALAXAR HOLDINGS LLC,
a Virginia Limited Liability Company,

Plaintiff-Appellees,

—versus—

BALCH AND BINGHAM, LLC, et al.,

Defendants-Appellants,

and

Frank Louis Amodeo,

Interested Party-Appellant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RESPONSE TO THE SECOND SUPPLEMENTAL JURISDICTIONAL QUESTION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

District Court Case No. 6:14-cv-00758-JA-GJK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Frank L. Amodeo
Federal Correctional Complex
Coleman — Low, Unit B-3
P.O. Box 1031
Coleman, Florida 33521-1031

**RESPONSE TO THE SECOND SUPPLEMENTAL JURISDICTIONAL QUESTION**

This court issued a supplemental question on whether this court, and by necessary implication, the district court before it had subject-matter jurisdiction over the complaint. Mr. Amodeo's response to that portion of the supplemental question was filed on or about March 23, 2015, demonstrating that not only are Palaxar's pleadings deficient but also that the evidentiary record is insufficient to permit correction of the pleading deficiency on appeal——and furthermore, the facts are such that the jurisdictional can never be corrected.

This court's supplemental question involves Mr. Amodeo's standing to appeal the district court's order focusing on Mr. Amodeo's right to intervene. In this regard, Mr. Amodeo raises two traditional reasons for that intervention: (1) as a practical matter the judgment impairs Mr. Amodeo's property interests; and (2) because of the close identity between the corporate defendant's alleged conduct and himself as the corporation's sole employee and sole shareholder, a current judgment against the corporation would have an adverse stare decisis effect against Mr. Amodeo in separate litigation.

Also, Mr. Amodeo points out that even if he is not allowed to intervene, this court and the district courts before it never had authority to entertain this lawsuit, thereby raising the unique question: whether a nonparty may intervene to inform a federal court that it does not have subject-matter juridiction over other litigant actions.

## Provisional Jurisdiction

Mr. Amodeo sought to intervene in the district court and part of this appeal involves the a challenge to the district court's denial of that attempt. This court has provisional jurisdiction to review the district court's decision on the intervention motion. See **Stone v. First Union Corp.**, 371 F.3d 1305, 1308-

1

09 (11th Cir. 2004). In order for the court's jurisdiction to solidify and for Mr. Amodeo to prevail in reversing the district court's decision, he must show that he had an interest in the outcome of the district court proceeding; that is, he has interest, which as a practical matter would be impaired by his exclusion from the district court proceeding. **Wolff v. Cash-4-Titles**, 351 F.3d 1348, 1353-54 (11th Cir. 2003). A fact, which, if shown, then not only meets the test for standing and intervention at trial, but also meets the test for a nonparty to appeal. See **Bloom v. FDIC**, 738 F.3d 58 (2d Cir. 2013).

Put differently, in order for a nonparty, who sought to intervene to appeal, the nonparty must establish the district court decree has as a practical matter an adverse effect on the nonparty. A standard readily met when the district court decree impairs an interest of the nonparty whether that is a tangible interest or an intangible effect such as issue preclusion or stare decisis. Mr. Amodeo shows that he meets both of these standards.

## HISTORICAL STATEMENT AND SUMMARY ARGUMENT

At the commencement of this proceeding there was some uncertainty over who owned AQMI Strategy Corporation (the United States or Frank Amodeo). It is now undisputed that Frank Amodeo is the sole owner of AQMI Strategy Corporation.[1] After commencement of this proceeding, the United States relinquished its putative claim to the entity. As a dissolved entity, without creditors, those assets (whatever they may be) passed through to Frank Amodeo or more accurately to his guardianship state.

---

[1] Subject of course to any marital interest due his spouse in the pending divorce action.

Prior to the government's decision to surrender its interest,[2] however, Palaxar served the government the complaint against AQMI and Nexia Strategy Corporation. The government failed to answer the complaint for the two allegedly forfeited entities. As more thoroughly described in the district court pleadings, allegedly is the appropriate description because by agreement AQMI Strategy Corporation was never forfeited. And Mr. Amodeo never owned an interest in Nexia Strategy Corporation, so he is not sure how that entity even appeared in the Preliminary Forfeiture Order. Nonetheless, Palaxar, et al., assumed the entities were forfeited to the United States and served the complaints on the United States as the owner of those entities.[3]

Instead of answering the complaints, the United States chose to reopen the criminal proceedings and unforfeit the corporations. It was at that point that Mr. Amodeo received notice of the Palaxar action. Of course, he was incarcerated, declared legally incompetent, and impoverished by a $181 million tax judgment, thus he sought to act for the entities pro se. Previously, the district allowed the impoverished, imprisoned, incompetent Mr. Amodeo to represent AQMI and other corporations in criminal actions (in those actions, the indictments were dismissed). The district court, however, decided Mr. Amodeo could not represent AQMI in this less significant civil action. Thereafter, Mr. Amodeo requested permission to intervene in the lawsuit since a judgment against AQMI (and now Nexia) would impair assets that belonged to him and a ruling against AQMI could have an adverse affect on Mr. Amodeo in other litigation.

Stated otherwise, the dissolved entity's assets had devolved to Mr.

---

[2] Arguably the government never had an interest in AQMI, but other than this default the matter appears to be moot after the "unforfeiture."

[3] Under Florida law, service of process should have been on the last active member of the board of directors, which according to the State of Florida is Frank L. Amodeo.

3

Amodeo's ownership, thus Mr. Amodeo sought to protect his own property from a frivolous judgment. Notably, the government by virtue of its "unforfeiture" and its voluntary dismissal of the 2008 indictments, no longer had a claim on the assets.

At this point we segue for just a minute to emphasize that Palaxar's complaint is frivolous beyond uncertainty. The complaint boils down to the following facts: A company, Mirabillis Ventures, Inc. and its wholly owned subsidiary Nexia Strategy Corporation, sued Palaxar Group and its principals for taking certain proprietary software. An Orlando newspaper ran a story on the lawsuit and Palaxar's principals assert this is a defamatory event.

We mention, sardonically, that any detriment to Palaxar's principals from the newspaper's reiterating the public information from the lawsuit probably paled in comparison to any detriment from the Palaxar principal's roles at Mirabilis Ventures Inc. and its subsidiary that did not pay $200,000,000 in taxes, by illustration: (1) Edie Curry was Vice Chairman of Mirabilis, and head of its Audit Committee,[4] and (2) Frank Hailstones was President and Chief Executive Officer of Mirabilis as well as statutory controlling person of the subsidiary that did not pay the taxes. If anything damaged their or Palaxar's reputation it was past performance not a newspaper's version of the civil complaint's allegations. A review of the numerous pleadings in the district court reveals why no one can figure out what Ms. Curry is doing bringing this action (a nuisance settlement?; self-generated deceptive cover for whatever stories she told her friends?). But under any motive, this litigation is without validity and should not have been commenced.

---

[4] At Ms. Curry's lead, Mirabilis as a private entity was designed to be Sarbanes-Oxley compliant and audited as if it were a public enterprise.

4

A characteristic that dovetails nicely with this court's jurisdictional question, because as this court's question indicates (and subject—matter jurisdiction jurisprudence agrees with), the district court should never have entertained this lawsuit.

## ARGUMENT

The complaint's frivolous nature makes any judgment (default or otherwise) arising from this action inherently unfair. And to the extent a frivolous judgment would impair Mr. Amodeo's otherwise exempt assets or provide a practical impediment to his rights in future litigation, he has a sufficient interest in the current action to permit intervention both at trial and on appeal.

**1. A nonparty to a lawsuit may appeal a judgment that affects the party's interest. Frank Amodeo now owns an unencumbered interest in the assets of AQMI and Nexia. That interest may be impaired if Palaxar's default judgment on the frivolous, ajurisdictional lawsuit becomes final.**

There is a general rule that nonparties to a suit do not have standing to appeal. **Castilla v. Cameron Cnty. Texas**, 238 F.3d 339 (5th Cir. 2001). An exception exists where a "decree affects a third party's interests, [then] he often is allowed to appeal." **Id.** at 349 (citing **Chagra v. San Antonio Light Div. of Hearst Corp.**, 701 F.2d 354-59 (5th Cir. 1983); see **In re Beef Indus. Antitrust Litig.**, 589 F.2d 786, 788 (5th Cir. 1979) ("the Fifth Circuit has been lenient in hearing the appeals of nonparties").

Unlike the typical nonparty appellant Mr. Amodeo sought to intervene in the district court action in order to protect his claims on the assets of AQMI and Nexia. See **Commodity Futures Trading Comm'n v. Topworth Int. Ltd.**, 205 F.3d 1107, 1113 (9th Cir. 1999) (a nonparty creditor who objected to a proposed

5

receivership distribution plan had standing to appeal). Additionally, once Mr. Amodeo became aware of the lawsuit, Mr. Amodeo diligently pursued his claims. He exerted an even more rigorous effort once he gained untainted control of the corporate defendants. Cf. **Walker v. City of Mesquite**, 858 F.2d 10712, 1074 (5th Cir. 1988) (stating that nonnamed class members should timely seek to intervene in order to appeal the judgment). As this court is aware, based on the text of its May 22, 2015 supplemental question, a significant portion of the district court litigation involves Mr. Amodeo seeking to intervene.

Mr. Amodeo did not initiate the litigation; Palaxar attempted to impair his interests without his knowledge; alone, under governing authority, this is sufficient reason to permit him to appeal both the prejudicial default judgment and the district court's denial of his motion to intervene.

Magnifying that reason to permit Mr. Amodeo to intervene is the blatantly frivolous nature of the complaint. The district court record reveals that Palaxar's allegations are so poorly presented and reasoned out that Palaxar could only prevail against a party that could not defend itself. After the government abandoned AQMI and Nexia, those entities were helpless; only Mr. Amodeo was willing to help the entities (and by virtue of the unforfeiture, his own) cause.

This court should permit Mr. Amodeo's intervention even if only to show that the federal courts never had jurisdiction to hear the complaint in the first place.

**2. A federal court that lacks subject—matter jurisdiction should dismiss an action nunc pro tunc to the time of filing even if a nonparty brings the jurisdictional defect to the court's attention.**

The district court lacked subject—matter jurisdiction over the controversy. This court sua sponte discovered the jurisdictional defect and inquired of the

6

parties; including the "nonparty" Frank L. Amodeo, about the jurisdictional defect. The "nonparty" responded showing that the jurisdictional defect was not merely poor draftsmanship, but also emerged from the underlying facts.

Under these circumstances, prior precedent suggests this court to take no further action other than remanding the matter to the district court with instructions to dismiss the case for lack of subject-matter jurisdiction. Cf. **Morrison v. Allstate Indemnity Co.,** 228 F.3d 1255, 1261 (11th Cir. 2000) (If the court determines, at any time, that it lacks jurisdiction, then the court must dismiss the complaint); cf. **Steamship v. Tugman,** 106 U.S. 118, 122 (1882) (A court should take no action once it realizes it lacks subject-matter jurisdiction, other than dismissing the proceedings).

In Mr. Amodeo's March 23, 2015 response to this court's earlier question (Attachment "1"), he demonstrates that Palaxar, on the existing record——and on the actaul facts——failed to meet the diversity requirements for invoking a federal district court's subject-matter jurisdiction.

On that showing, whether on its own or via Mr. Amodeo's presenting the issue as part of his nonparty appeal, this court should adjudicate the foundational jurisdictional question. A federal court has an obligation to inquire into its own jurisdiction or the original jurisdiction of a subordinate court whenever the possibility exists that either the court did not or does not have subject-matter jurisdiction. See **Philbrook v. Glodgett,** 421 U.S. 707 (1975); **City of Kenosha v. Bruno,** 413 U.S. 507 (1973); see also **United States v. Peter,** 310 F.3d 709 (11th Cir. 2002) (a jurisdictional error can be raised at any time even after a criminal sentence has been completed). The proposition emerging from these and a host of similar decisions is that regardless if a federal court discovers that it lacks jurisdiction——even a nonparty bringing it to the court's attention——then the court should take no other action other than to dismiss the proceeding.

Whether Mr. Amodeo is permitted to intervene is truly irrelevant since he has demonstrated that the original district court lacked the authority to adjudicate the complaint as initiaum. This court should remand with instructions for the district court to dismiss the complaint.

**3. In determining whether a nonparty's interest, as a practical matter, would be sufficiently impaired to justify allowing a nonparty to appeal. The court may consider any significant legal effect on the applicant's interest not only res judicata, but also stare decisis. Mr. Amodeo as the sole employee and sole shareholder of AQMI Strategy Corporation must necessarily have been involved in the alleged defamation if AQMI was involved. The identity between Amodeo and AQMI generates a paradigmic example of privity, which in turn allows for issue preclusion in subsequent proceedings against the nonparty.**

The doctrine of res judicata bars a second suit involving the same parties or their privies based on the same cause of action. **Parklane Hosiery Co. v. Share,** 439 U.S. 322, 326 n.5 (1979). A cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. See **Nsosun v. General Mills Rest. Inc.,** 124 F.3d 1255, 1257 (10th Cir. 1997).

A second aspect of res judicata is the principle of collateral estoppel or issue preclusion. This principle precludes parties or their privies from relitigating issues, which were actually litigated or necessarily decided in an earlier proceeding. See **In re Carey,** 583 F.3d 1249, 1251 (10th Cir. 2009); **Restatement (Second) of Judgment §27.** Significantly, the Supreme Court has validated the application of the preclusive doctrines against nonparties in certain circumstances. **Taylor v. Sturgell,** 553 U.S. ___, 161 (2008) (identifying the circumstances).

In this instance, the relationship between Mr. Amodeo and AQMI (sole employee for most of the relevant time period and sole shareholder throughout) creates a scenario that overlaps several of the identified circumstances. Essentially, if AQMI was responsible for the tort, then Mr. Amodeo must be,

8

since he and AQMI, as a practical matter, were one and the same. Mr. Amodeo must have engaged in the tortious conduct. Significantly, in order to prosecute the underlying action, Mr. Amodeo must testify, he is an essential witness[5] because only through his intent and direction could AQMI have acted.

Thereby, providing a classic basis for allowing Mr. Amodeo to intervene in the district court action, as well as justifying his nonparty appeal of the district court's judgement.

## CONCLUSION

Mr. Amodeo has diligently attempted to intervene in these proceedings in order to protect his property interests against a frivolous judgment and to ensure that the district court judgment will not have an adverse effect on him in other litigation between him and other parties to this action. Due process favors providing Mr. Amodeo the opportunity to be heard in this appeal.

On the other hand, since the district court lacked subject-matter jurisdiction, the most expeditious and prudent course for this court to take is to dismiss the case altogether.

---

[5] The logical inference is that Palaxar hoped to gain some advantage since the United States would likely fail to defend the corporations, and certainly did not wish to name me individually because of the counterclaims. Thus, Palaxar, et al., tried to sneak in the back door. Stated differently, they believed because AQMI could not act at all, and because the United States would default, they could gain an easy (even if illegitimate) decision to protect themselves later. This type of gamesmanship is unconscionable.

Respectfully submitted on this 12th day of July 2015 by:

Frank L. Amodeo
Federal Correctional Complex
Coleman - Low, Unit B-3
P.O. Box 1031
Coleman, Florida 33521-1031

## CERTIFICATE OF SERVICE

This petition was delivered in a pre-addressed, postage-paid envelope to the prison mailing authorities on the same day as signed, and a copy was sent to the plaintiffs on the next day.

Frank L. Amodeo

## VERIFICATION

Under penalty of perjury as authorized in 28 U.S.C. §1746, I declare that the factual allegations and factual statements contained in this document are true and correct to the best of my knowledge.

Frank L. Amodeo

10

**ATTACHMENT "1"**

Memorandum Response to Initial Summary Judgment Question

No. 14-14745-C

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

PALAXAR GROUP LLC, et al.,
a Virginia Limited Liability Company
PALAXAR HOLDINGS LLC,
a Virginia Limited Liability Company,

Plaintiff-Appellees,

versus

Balch and Bingham, LLC, et al.,

Defendants,

and

Frank Louis Amodeo,

Interested Party-Appellant.

District Court Docket No: 6:14-cv-00758-JA-GJK
**************************************************************

## MEMORANDUM IN RESPONSE TO THE COURT'S QUESTION
## ON SUBJECT-MATTER JURISDICTION

Palaxar's allegations are inadequate to invoke federal diversity jurisdiction. A party invoking federal diversity jurisdiction must allege all the facts necessary for that jurisdiction. See **Mallory and Evans Contractors and Engineers, L.L.C. v. Tuskegee Univ.**, 663 F.3d 1304, 1305 (11th Cir. 2011); **Cabalceta v. Standard Fruit Co.**, 883 F.2d 1553, 1557 (11th Cir. 1989). That includes identifying and pleading the citizenship of each member of any noncorporate, limited-liability-enterprise party to the action. See **Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC**, 374 F.3d 1020, 1022 (11th Cir. 2004). Palaxar fails to identify its members and their citizenship. Likewise, Palaxar omits the identity and citizenship of most of the limited-liability defendants' members. On these pleadings, neither this court nor the district court before it has subject-matter jurisdiction and the action should be dismissed.



4

controlled or directed. See Hertz Corp. v. Friend, 559 U.S. 77, 90-92 (2010) (The corporation's headquarters is usually its principal place of business; provided that its headquarters was the business's actual center of direction, control, and coordination; and not simply an office where the corporation held its board meetings). A defunct corporation's principal place of business is the last territory where the business's principals or officers directed the business's affairs.[2/] Nexia's last operating headquarters was in Richmond, Virginia, where Palaxar's principals developed (the then Nexia) Palaxar antifraud softwares. Notably, Nexia was located in its sister company's (Hoth Holdings, LLC) Richmond, Virginia building.

### A Palaxar Member is a "Citizen" of Florida

A foreign citizen who has permanent residency in a particular United States state is a citizen of that state for diversity purposes. 28 U.S.C. §1332(c)(2) (2014). Palaxar cannot establish complete diversity between its members and the current defendants,[3/] since, for diversity purposes, Mr.

---

[2/]. Although I could find no definitive Eleventh Circuit decision on the citizenship of a dissolved corporation. The Second Circuit supports the proposition that a corporation is a citizen if the state where it last transacted business. M. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 141 (2d Cir. 1991). The Third Circuit takes the opposite approach stating, that a dissolved corporation's citizenship is only in the state of incorporation. See Midlantic Nat'l Bank v. Hanson, 48 F.3d 693, 697-98 (3d Cir. 1995). Other circuits have rejected a bright line test and instead require a fact specific analysis. See, e.g., Athena Automotive v. DiGregorio, 166 F.3d 288, 291 (4th Cir. 1999); Harris v. Black Clawson, Co., 961 F.2d 547, 550 (5th Cir. 1992). Finally, the D.C. Circuit concluded that when a corporation takes formal steps to withdraw from a state and surrenders its authority to do business then the state of incorporation is the test for citizenship. Ripalda v. Am. Ops. Corp., 977 F.2d 1464, 1468-69 (D.C. Cir. 1991). [In the light of the circuit split, the case as far too much significance to be decided on the mediocre record now available to this court.] FLA.

[3/]. The Supreme Court held that regardless of whether a member of an LLC can be a proper party on its own, the member's citizenship cannot be disregarded for purposes of determining the LLC's citizenship. See Carden v. Arakoma Assocs., 494 U.S. 185 (1990) ("[W]e reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members . . . ." (internal quotation marks omitted)).



5

Hailstones (a British citizen) is a citizen of Florida—as are most of the defendants. And there are other Palaxar members (e.a., Laurie Holtz) who are either citizens of Florida or Alabama, thus nondiverse to one defendant or another. Accordingly, from the beginning, the federal district court lacked subject-matter jurisdiction over this action, thus the action must be dismissed. Cf. **Hedge Capital Investments Limited, et al., v. Sustainable Growth, et al.,** 2014 U.S App. LEXIS 22798 (11th Cir. 2014).

### Factual Record is Insufficient to Determine Diversity

The underlying record is replete with jurisdictional questions; like the effect of Nexia's forfeiture on its citizenship (Palaxar attempted to perfect service by serving the Virginia office of the United States Attorney). At the time of filing this complaint, the United States owned Nexia and had allowed the entity to dissolve. Relatedly, the district court's odd transfer of Nexia from the United States to me raises other questions, since I never previously owned Nexia. The "unforfeiture" is now on appeal to this court in a separate case. See **United States v. Amodeo,** case no. 6:08-cr-176-Orl-28WK Notice of Appeal (M.D. Fla. Oct. 2014).

Equally, since the Nexia dissolution resulted in its assets being transferred to its shareholder, which is now presumably my guardianship estate; my Florida guardianship may impact the diversity question. 28 **U.S.C.** §1332(c)(2) (2014). Plus, there has not been any mention of Mirabilis Ventures, Inc. (Nexia's original shareholder) and what the consequences of Mirabilis's bankruptcy proceedings are on the diversity question. It is noteworthy that Mirabilis Ventures, Inc.'s Chapter 11 was jointly administered with Hoth, L.L.C. See **In re: Mirabilis Ventures, Inc.,** case no. 6:08-bk-04327-

6

JSJ (Bankruptcy M.D. Fla. May 2008); Hoth Holdings, L.L.C., case no. 6:08-bk-04328KSJ (Bankruptcy M.D. Fla. May 2008). As previously mentioned, Hoth Holdings owned the Richmond, Virginia headquarters of Nexia Strategy Corporation, which is where the "Palaxar" antifraud software was developed. The primary point of this paragraph is that the factual record is so underdeveloped that prosecution of this appeal is not only premature but also wasteful of both the parties' and the court's resources. At a minimum, the matter should be remanded to the district court for evidentiary proceedings. Belleri v. United States, 712 F.3d 543, 548 (11th Cir. 2013) (When a court of appeals discovers "a serious question regarding the factual predicate for subject-matter jurisdiction we should remand for finding to resolve the jurisdiction question"); see Travaglio v. American Express, et al., 735 F.3d 1286 (11th Cir. 2013). The existing record and the existing pleadings are inadequate to determine if diversity jurisdiction exists.

## CONCLUSION

"For diversity jurisdiction to be proper, the court must be certain that all plaintiffs have a different citizenship from all defendants." Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A., 841 F.2d 1254, 1258 (5th Cir. 1988) (citing Strawbridge v. Custiss, 7 U.S. (3 CRANCH) 267 (1806)). On this record the only certainty is that nothing is certain; this court should dismiss the action outright.

Respectfully submitted this 22 day of March 2015 by:

Frank L. Amodeo #48883-019
FCC – Low
P.O. Box 1031
Coleman, Fl 33521-1031

7

## Verification

I declare the foregoing statements to be true and correct to the best of my knowledge and memory. Of course my current incarceration limits my ability to verify some of the information, with that qualification, as authorized by 28 U.S.C. §1746, I verify this pleading under penalty of perjury.

Frank L. Amodeo

## Certificate of Service

At the current time the Coleman prison photocopier is broken and I do not have access to sufficient mailing stamps to serve all the parties by first class mail. Therefore, I am cross-noticing this memorandum in the district court case. The consequence of the cross-notice, the district court will serve the response via the CM/ECF system. That is, the response will be sent to all the parties. I have mailed a copy by first class mail to Palaxar's counsel on the same day as sent to he court of appeals.

March 21, 2015

Frank L. Amodeo

**ATTACHMENT "2"**

Second Supplemental Jurisdictional Question

No. 14-14745-C

## SUPPLEMENTAL JURISDICTIONAL QUESTION

It appears that the parties have not addressed whether, in light of the fact that the relevant pleadings failed to sufficiently allege the citizenships of any of the parties so as to establish the district court's subject-matter jurisdiction in the first instance, (1) the allegations should be amended on appeal to cure jurisdictional deficiencies, (2) current record evidence adequately establishes the parties' citizenships, or (3) the record should be supplemented with additional evidence to demonstrate the parties' citizenships. The parties should address these issues in their responses to this jurisdictional question.

Additionally, please address whether Frank L. Amodeo may appeal the denial of his Fed.R.Civ.P. 24(a) motion to intervene. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004) (noting that this Court has provisional jurisdiction to review a district court's denial of a motion to intervene based on right); *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353-54 (11th Cir. 2003) (providing that only a litigant who is aggrieved by an order may appeal, noting that one generally lacks standing to appeal an order if they are not a party to the action, but acknowledging that nonparties can sometimes intervene to appeal); *see also* Fed.R.Civ.P. 24(a).

3

indicated it has such a capability[1]—Palaxar cannot cure the actual jurisdictional defect, i.e., a lack of complete diversity.

A pleading defect may be cured by an amendment, but an actual jurisdictional defect, existing at the time of the proceeding's commencement, cannot be cured by amendment or admission. **Arena v. Graybar Elec. Co., Inc.,** 669 F.3d 214, 218 (5th Cir. 2012) (Rule 15(a) and §1653 "do not permit creation of jurisdiction when none existed at the time the original complaint was filed"); see generally Grupo Dataflux v. Atlas Global Grp, L.P., 541 U.S. 567, 571 (2004) ("regardless of the costs imposed" the outer limits of federal jurisdiction must be honored); but see Newman-Green Inc., v. Alfonzo-Lorrain, 490 U.S. 826 (1989) (describing a narrow range of circumstances when a federal court might cure a jurisdictional defect through Federal Rule of Civil Procedure 21). The current state of these proceedings, Palaxar's limited capabilities, and the indispensibility of the nondiverse parties makes our jurisdictional defect irremediable.

### Nexia Strategy Corporation is a Citizen of Virginia

A corporation is a citizen of every state where it is incorporated or where it has its principal place of business. See 28 U.S.C. §1332(c)(1). The precise definition of "principal place of business" remains unsettled, but generally encompasses a location where the corporation's operations are

---

1/. A Seventh Circuit opinion articulates what some of the parties must be thinking. "Are we being fusspots and nitpickers in trying (so far with limited success) to enforce rules designed to ensure that federal courts do not exceed the limits that the Constitution and federal statutes imposed on their jurisdiction? Does it really matter. . ,. . The sky will not fall if federal courts occasionally stray outside the proper bounds. But the fact that limits on subject-matter jurisdiction are not waivable or forfeitable - that federal courts are required to police their jurisdiction - imposes a duty of care that we are not at liberty to shirk. And since we are not investigative bodies ,., . ,., . [it is] ,.,. . the responsibility of lawyers who practice in the federal courts, even if only occasionally, to familiarize themselves with the principles of federal jurisdiction." Smoot v. Mazda Motors of Am., Inc., 469 F.3d 675, 678 (7th Cir. 2006).

